## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ali K. Menze,                                              Case No. 0:23-cv-03901 (KMM/LIB)

                    Plaintiff,

v.                                                                        **ORDER**

Astera Health, *f/k/a/*
Tri-County Health Care,

                    Defendant.

---

        This case arises from Plaintiff Ali. K. Menze's termination from her position as a nurse at a hospital operated by Defendant Astera Health, formerly known as Tri-Country Health Care ("Astera"). She alleges that Astera terminated her because she refused to wear an N95 mask at work during the height of the COVID-19 pandemic. Ms. Menze asserts numerous causes of action, but this lawsuit is rooted in federal civil rights law. Before the Court are two motions: Astera's Motion to Dismiss (ECF 8) and Motion for Sanctions against Ms. Menze (ECF 20). For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED**, and the Motion for Sanctions is **DENIED**.

### I.      Background and Procedural Posture

        Ms. Menze is a registered nurse, who worked for Astera from November 2020 until January 2022. ECF 1 ("Compl." or "Complaint") ¶ 1. Astera, like many other employers during the COVID-19 pandemic, required its employees to be vaccinated against the virus.

*See, e.g.*, *id*. ¶ 28; ECF 11 (Def's Mem. in Supp. to Mot. to Dismiss) at 2. Ms. Menze sought and received a religious accommodation allowing her to forgo this vaccination. *See* Compl. ¶¶ 16, 33, 34; ECF 11 at 3. However, under Astera policy, she alleges that she was subsequently required to wear an N95-style face mask while at work, rather than the surgical-style masks that vaccinated employees were required to wear. Compl. ¶ 17. According to the Food and Drug Administration, a surgical mask is a "loose-fitting, disposable device that creates a physical barrier between the mouth and nose of the wearer and potential contaminants in the immediate environment" while an N95 mask is "a respiratory protective device designed to achieve a very close facial fit and very efficient filtration of airborne particles." U.S. FOOD & DRUG ADMIN., *N95 Respirators, Surgical Masks, Face Masks, and Barrier Face Coverings*, https://www.fda.gov/medical-devices/personal-protective-equipment-infection-control/n95-respirators-surgical-masks-face-masks-and-barrier-face-coverings#s4. In other words, Ms. Menze alleges that, due to her unvaccinated status, she was required to wear a tighter-fitting, extra-effective face mask while at work.

Ms. Menze was on maternity leave until January 17, 2022.[1] Compl. ¶¶ 32, 46. She appears to have been aware of the masking requirements before she returned to work, and when she did so, Ms. Menze states that she did not wear an N95 mask and instead wore a surgical mask. *Id*. ¶¶ 47–48. When Ms. Menze was instructed to wear the N95 mask or be

---

[1] Ms. Menze's Complaint identifies the date of her return to work on "January 17, 2021." *See* Compl. ¶ 46. The Court assumes this is a typo and that Ms. Menze actually returned to work on this date in 2022, as the surrounding paragraphs all indicate a series of events occurring in December 2021 and January 2022.

terminated, she chose the latter. *Id*. ¶ 55 ("The Plaintiff informed [her operations director] that she would not wear a N95 mask as a general practice and if the Defendant choose to terminate the Plaintiff's employment a written statement giving the reason why was needed."). Ms. Menze alleges that she was terminated on January 28, 2022. *Id*. ¶ 60.

On March 11, 2022, Ms. Menze filed a complaint in this Court, alleging that Astera's vaccine and mask policies, and her resulting termination based on those policies, violated a number of laws. *See* Case No. 22-cv-645 at ECF 1. After Astera moved to dismiss (*see id*. at ECF 7), but before the Court could rule on that motion, Ms. Menze voluntarily dismissed her claims without prejudice pursuant to Fed. R. Civ. P. 41(a)(A)(i) (*see id*. at ECF 14). On December 28, 2023, Ms. Menze filed her new Complaint, resulting in the instant case. As before, Ms. Menze broadly alleges that her termination under Astera's vaccine and mask requirements violated several laws, many of which also featured in the 2022 complaint. On January 19, 2024, Astera once again moved to dismiss Ms. Menze's claims, for failure to state a claim under Fed. R. Civ. P. 12(b)(6), for lack of federal subject matter jurisdiction under Rule 12(b)(1), or for both. ECF 8. Separately, Astera moves for sanctions against Ms. Menze pursuant to Rule 11. ECF 20.

## II.   Applicable Legal Standards

### A.  Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of detailed factual allegations in a pleading, but the complaint must contain facts with enough specificity "to

raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). Furthermore, as a pro se litigant, Ms. Menze's complaint is given "liberal construction." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("'When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible ... then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.'") (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Ms. Menze's Complaint raises claims based in both state and federal law, and Astera's motion also seeks the dismissal of certain claims for lack of federal subject matter jurisdiction. This Court is a court of limited jurisdiction and may hear two main kinds of cases. *See, e.g.*, *Badgerow v. Walters*, 596 U.S. 1, 7 (2022) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). First, this Court may "decide diversity cases—suits between citizens of different States as to any matter valued at more than $75,000." *Id.* (citing 28 U.S.C. § 1332(a)). Second, it has the "power to decide federal-question cases—suits 'arising under' federal law." *Id.* (citing 28 U.S.C. § 1331). Additionally, "[a] district court exercising original jurisdiction over federal claims also has supplemental jurisdiction over state claims which 'form part of the same case or

controversy' as the federal claims." *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (quoting 28 U.S.C. § 1367(a)). But a district court "may decline to exercise supplemental jurisdiction" over remaining state law claims when all of the claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3); *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (explaining that in considering the exercise of supplemental jurisdiction, a district court has the "discretion either to remand the remaining state-law claims or to keep them in federal court"). The factors a court should consider when deciding whether to exercise supplemental jurisdiction over remaining state law claims include "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal claims are dismissed prior to trial, these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7; *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005).

### B. Motion for Sanctions

Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." The purpose of this requirement is to

> certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "[T]he court may impose an appropriate sanction on any ... party that violate[s]" Rule 11. Fed. R. Civ. P. 11(c)(1). Sanctions may be monetary or non-monetary, and may include an order requiring payment of reasonable attorney fees, but "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1031 (D. Minn. 2014) ("[D]eterrence is the primary purpose of Rule 11 sanctions.") (citation omitted). "'An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.'" *Rickmyer*, 995 F. Supp. 2d at 1031 (quoting Fed. R. Civ. P. 11(c)(6).).

## III.   Analysis

### A.  Motion to Dismiss

Ms. Menze's Complaint asserts a diffuse array of claims against Astera. Fundamentally, Ms. Menze alleges that requiring that she wear an N95 mask and firing her for failing to do so violated federal statutes protecting her from religious discrimination, along with numerous other laws, both federal and state. *See, e.g.*, Compl. ¶ 25 (alleging that the N95 mask requirement created a "disparaging work environment where one class

6

of employee that sought and was granted an exemption [to the vaccination requirement] was required to implement more restrictive interventions than another class of employee"); *id*. ¶ 39 ("[T]o require a N95 mask strictly based on whether the Plaintiff had a COVID-19 vaccination created disparate treatment or disparate impact upon the Plaintiff, violated her right to privacy, and required medical device intervention against her will."). Because the Court construes Ms. Menze's Complaint as primarily rooted in employment antidiscrimination law, the Court will first consider that claim.

### i. Title VII Claims

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Ms. Menze explicitly invokes Title VII in her Complaint, and generally alleges that the requirement that she wear an N95 mask and her termination for failing to do so were unlawful employment practices linked to the religious exemption she sought and received allowing her to forego a COVID vaccine requirement. Astera moves to dismiss Ms. Menze's Title VII claims for two reasons: first, due to her failure to exhaust her administrative obligations, and second, due to the legal insufficiency of her religious discrimination allegations. *See, e.g.*, ECF 18 (Def's Reply in Supp. of Mot. to Dismiss) at 3. Because the Court agrees that Ms. Menze has failed to satisfy administrative

prerequisites to her Title VII claims, it will grant Astera's motion and declines to address the remainder of Astera's arguments.[2]

"Under Title VII, a plaintiff must 'provide the EEOC the first opportunity to investigate discriminatory practices and enable it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 898 (8th Cir. 2024) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (cleaned up). As such, "[a] plaintiff may not assert a claim under Title VII unless she has filed a timely charge with the EEOC and … the EEOC issues a notice, commonly called a right-to-sue letter." *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 573 (8th Cir. 1997) (citing 42 U.S.C. §§ 2000e–5(e)-(f) and *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974)); *see also Soboyede v. KLDiscovery*, No. 20-cv-02196 (SRN/TNL), 2021 WL 1111076, at *3 (D. Minn. Mar. 23, 2021) (quoting *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim . . . .") (internal brackets omitted).

Ms. Menze does not allege that she ever filed charges with the EEOC related to her dismissal from Astera before commencing suit. Instead, the Complaint states that she deliberately eschewed the EEOC filing process. Compl. ¶ 79 (explaining that she "chose

---

[2] Although failure to exhaust administrative remedies is an affirmative defense to a Title VII claim that a defendant must plead and prove, *see Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106 (8th Cir. 2007), where the plaintiff's failure to exhaust is apparent from the face of the complaint dismissal under Rule 12(b)(6) is appropriate, *e.g.*, *Agnew v. Brands*, No. 4:21-cv-01222-LPR, 2023 WL 2164194, at *3 n.26. Here, as explained below, Ms. Menze's Complaint plainly reveals her failure to exhaust.

not to seek an EEOC resolution" because the EEOC could only "provide [her] a letter granting the right to sue for damages under certain stated remedies" and that she believes she has "retained the right of redress regardless of any EEOC process outcome"). Likewise, her opposition brief to the pending motion confirms that Ms. Menze chose not to file with the EEOC because she did not think it was worthwhile. *See* ECF 15 (Pl's Opp. to Mot. to Dismiss) at 3–4 ("To make an appeal to any department agency … would have been the equivalent of seeking a band aid for a trauma wound. The damage was done and any administrative remedy would have been a band aid that would never remedy the trauma incurred by the Plaintiff.") (internal quotations omitted). Although she explains why she did not first file with the EEOC, Ms. Menze was required to do so. Simply put, this Court must dismiss her Title VII claims for this reason.

Moreover, the Court will grant Astera's request to dismiss these claims with prejudice. *See* ECF 11 at 19–20. "It is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would be futile." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021). Ms. Menze's Title VII claims fall into this category because the statute also provides for deadlines for making the prerequisite EEOC filing. "Plaintiffs must file a charge with the EEOC within 300 days of the alleged 'unlawful employment practice.'" *Ringhofer*, 102 F.4th at 898 (quoting 42 U.S.C. § 2000e-5(e)(1)). Ms. Menze returned to work on January 17, 2022, whereupon she alleges she was required to wear an N95 mask, and she alleges she was terminated for refusing to do so on January 28, 2022. Assuming that either of these events represented a potentially actionable "unlawful employment practice," it has now

been well over two years since both. Thus, Ms. Menze has missed her deadline, and missed it badly.

To be clear, Ms. Menze alleges no facts by which this Court can reasonably infer that an exception to the timeliness requirements of 42 U.S.C. § 2000e-5 could be warranted. *See, e.g.*, *Rodriguez v. Wal-Mart Stores, Inc.*, 891 F.3d 1127, 1129 (8th Cir. 2018) (discussing potential bases for applying equitable tolling or equitable estoppel to the statutory requirement for a timely submission of EEOC charges). Instead, Ms. Menze's own pleadings indicate that she was immediately aware that Astera was imposing its N95 mask requirement on her, was immediately aware why it was imposing it (because she did not receive the COVID-19 vaccine), and was immediately aware that Astera was terminating her because of her refusal to wear an N95 mask. In other words, there is no allegation that Astera hid the fact that it was taking these actions or obfuscated its reasons for taking them. Nor is there any other explanation offered by Ms. Menze for her failure to timely file an EEOC charge related to either action.

Further, there can be no doubt that Ms. Menze was aware of her filing obligations with the EEOC before commencing this suit. Astera's motion to dismiss Ms. Menze's initial complaint foreshadowed this very issue. *See* Case No. 22-cv-645 at ECF 9 at 6. Astera's motion on that complaint came less 90 days after Ms. Menze's termination, and argued for dismissal because Ms. Menze had not yet filed or received her right-to-sue paperwork. *Id*. The fact that she nevertheless failed to file, despite likely still having time to do so, reflects a deliberate course of action on her part, without any reasonable excuse.

Because any Title VII claims brought by Menze are barred as a matter of law, and no amount of repleading can save them, they are dismissed with prejudice.

### ii.  Other Claims

Astera identifies the following, additional claims and subgroupings of claims in Ms. Menze's Complaint: 1) claims arising under the Religious Freedom Restoration Act ("RFRA") and 42 U.S.C. § 1983; 2) claims arising under 42 U.S.C. § 1985; 3) health privacy claims, potentially involving the Health Insurance Portability and Accountability Act (commonly know as "HIPAA"); 4) claims involving the application of federal criminal statutes; 5) claims involving medical ethics rules arising from military tribunals after the Second World War, commonly known as the Nuremberg Code; 5) and a bevy of potential state-law claims. ECF 11 at 11–22.

Astera seeks to dismiss all of the above—mostly for failure to state a claim under Rule 12(b)(6), while asking the Court to decline to exercise supplemental federal jurisdiction over any state-law claims not specifically dismissed under Rule 12(b)(6).[3] For her part, Ms. Menze does not appear to contest Astera's characterization or interpretation of most of the discrete claims comprising her Complaint. *See generally*, ECF 15 at 7–13 (responding in turn to each of Astera's arguments for dismissal without disagreeing about the claims identified by Astera or identifying claims omitted by Astera's motion). However, Ms. Menze does suggest that she did not intend to assert the Nuremberg Code

---

[3] Astera clarifies its contention that any state claims made in Ms. Menze's Complaint also fail under Rule 12(b)(6), but moves to dismiss these pursuant to Rule 12(b)(1) due to the "obvious lack of subject matter jurisdiction." *See* ECF 11 at 11 n.4.

as creating a cause of action, but rather invoked it for general principles of bodily autonomy and free will. *See* ECF 15 at 11 ("Any statements by the Plaintiff referencing the Nuremberg Code are only to highlight that each individual has the right to administer their body (property) in accordance with their own free will which includes, but is not limited to their religion preference and the right to 'life, liberty, and the pursuit of happiness (property)'."). And she further clarifies that she is not seeking to enforce federal criminal statutes through this lawsuit, but rather "only ask[s] the court to turn over all the evidence and order an investigation into whether the Criminal Statutes have been broken by the Defendant and its agents."[4] *Id*. at 10–11.

The Court has independently reviewed Ms. Menze's Complaint in line with its duty to liberally construe her pro se claims. The Court finds that Ms. Menze did not intend to assert a cause of action arising under the Nuremberg Code or federal criminal statutes. Otherwise, the Court agrees with Astera's identification of the non-Title VII claims raised in Ms. Menze's Complaint, and they are analyzed in turn below.

### RFRA and Section 1983 Claims

Astera argues that Ms. Menze's RFRA and Section 1983 claims fail, primarily because Astera is not a state actor. The Court agrees. Under RFRA, the "'[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694 (2014) (quoting 42 U.S.C. § 2000bb-1(a)). "The Act defines 'government' to include any

---

[4] Ms. Menze cites no authority giving this Court the power to order criminal investigations, and the Court declines Ms. Menze's request.

'department' or 'agency' of the United States." *Id.* at 695 n.2 (citing § 2000bb–2(1)). Similarly, "Section 1983 creates a cause of action for the alleged constitutional violations of government actors." *Clinton v. Garrett*, 49 F.4th 1132, 1139 (8th Cir. 2022); *see* 42 U.S.C. § 1983 (creating liability for constitutional violations arising from persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State …."). Notably, Ms. Menze alleges that Astera is a "nonprofit public service corporation" and "registered health care provider." Compl. ¶ 7. Nothing in her complaint alleges that Astera is a department or agency of state or federal government, or any other form of state actor.

In opposing Astera's motion, Ms. Menze does not address Astera's arguments concerning the limitations of RFRA to departments and agencies of government, but she does argue that Astera's actions fall within a Section 1983 claim because Astera was allegedly acting under color of a "custom" of state law, which Ms. Menze alleges was established via a public-private partnership that took shape during the unfolding COVID-19 pandemic. *See* ECF 15 at 7 ("It is clear that the Defendant was acting under the color of a new 'custom' where the 'pandemic' of the COVID virus was promoted and propagated on a nonstop revolving news cycle[] through every public news outlet featuring prominent public figures, politicians and government health officials.").

But Ms. Menze's theory would require elaborately drawn inferences, whereas the law is exceedingly simple: "[o]nly state actors can be held liable under Section 1983." *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (quotation omitted). To be a state actor, a "private party must have 'reached an understanding' with state officials to deny civil rights and have been [a] 'willful participant in joint activity'" with the state.

13

*Steele v. City of Bemidji*, 257 F.3d 902, 906 (8th Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Ms. Menze does not allege facts from which this Court can reasonably infer that Astera's vaccine and mask policies were the product of any kind of willful coordination or joint participation with the state. The fact that the vaccine and mask policies of Astera, a private employer, may have been consistent with broad public health messaging and guidance during the pandemic simply does not suffice to place those policies under color of state law. Ms. Menze's RFRA and Section 1983 claims are therefore dismissed.

Astera further seeks the dismissal of Ms. Menze's RFRA and Section 1983 claims with prejudice. *See* ECF 11 at 20. Unlike in dismissing a clearly futile claim, like Ms. Menze's Title VII claim above, a closer call emerges when a plaintiff's alleged facts repeatedly fail to support their legal claims. *See, e.g., Daniel v. Honeywell Int'l Inc.*, No. 22-cv-3184 (ECT/DLM), 2023 WL 6392404, at *6 (D. Minn. Oct. 2, 2023) ("Dismissal with prejudice is often appropriate when a plaintiff has shown persistent pleading failures despite one or more opportunities to amend. [But] when a plaintiff's claims might conceivably be repleaded with success, dismissal without prejudice may be justified.") (internal quotations omitted). Ms. Menze's RFRA and Section 1983 claims fall into the category that could conceivably be salvaged, if pleaded differently. For example, Ms. Menze does not plausibly allege facts from which this Court could infer that Astera was a state actor in requiring that she wear an N95 mask because she was not vaccinated. In theory, these deficiencies could be fixed with yet more repleading by Ms. Menze, but the Court will draw a line instead. In repleading her case once already, Ms. Menze

demonstrated a repeat failure to allege facts that align with the requirements for her RFRA and Section 1983 claims, which consequently fail for a very basic reason. The Court does not believe that giving Ms. Menze further opportunities to allege new facts is warranted. Therefore, her RFRA and Section 1983 claims are dismissed with prejudice.

### Section 1985 Claims

Section 1985(3) creates a cause of action for conspiracies to deprive persons of the equal protection, privileges, and immunities of federal law. 42 U.S.C. § 1985(3). To state a claim under § 1985(3), the plaintiff must allege:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). Astera moves to dismiss Ms. Menze's Section 1985 claim as failing to meet each pleading element. Because the Court agrees with Astera that Ms. Menze has failed on the first element, it declines to address the remainder.

"[T]o state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Kelly v. City of Omaha*, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). "This standard requires that allegations of a conspiracy be pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Id.* (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th

Cir.1989) (cleaned up). Furthermore, the Eighth Circuit has consistently held "'that a corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself to violate 42 U.S.C. § 1985.'" *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012) (quoting *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir.1983)). The rare exception to this rule can arise "where individual defendants are named as well as the corporation, and those individuals acted outside the scope of their employment or for personal reasons." *Cross*, 721 F.2d at 1156.

Considering these parameters, Ms. Menze has not pleaded a conspiracy under Section 1985. Ms. Menze's Complaint names only one defendant, Astera, a corporate entity. The Complaint does not "particular[ly]" identify, let alone "specifically demonstrate," what outside actor or actors Ms. Menze believes Astera and its agents conspired with in implementing the mask and vaccine requirements that she alleges violated her civil rights. To the extent it discusses *internal* individuals at Astera as enforcing mask and vaccine requirements, there is no allegation (or any reasonable inference to be drawn from the allegations) that such individuals were acting outside the scope of their employment or for personal reasons in doing so.

In opposing the pending motion, Ms. Menze provides a new theory of conspiracy between Astera and federal and/or state government actors, in which Astera received government "reimbursements for each COVID vaccination that [Astera] administered." ECF 15 at 8. In other words, and without elaborating, Ms. Menze argues that Astera conspired to force her to take a COVID vaccine as part of a monetary kickback scheme with unnamed government forces. There are numerous reasons that this argument is

unavailing. First, it involves allegations of facts outside of the pleadings, which the Court does not typically consider on a motion to dismiss. *See, e.g.*, *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (when ruling on a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings"). But even if Ms. Menze had properly alleged this kickback scheme in her Complaint, she would still fail to plead a conspiracy under Section 1985. Notably, Ms. Menze fails to identify which particular government actors—either individuals or even broad agencies—she believes were in cahoots with Astera in this cash-for-vaccines scheme; nor does she offer facts that would suggest that such a scheme was the product of a meeting of the minds directed toward depriving her of her constitutional rights, as opposed to any other reason that the government might incentivize vaccine uptake in the public. Finally, a cash-for-vaccines scheme does not actually align with the specifics of the constitutional violation that Ms. Menze alleges in this case. By her own allegation, Ms. Menze was not required to take a COVID vaccine. Instead, she argues that it was unconstitutional to require her to wear a different type of face mask because she refrained from the vaccine. So, the existence of a plot between the government and Astera to compensate Astera for administering vaccines, even if properly pleaded, is not relevant to alleging a conspiracy between Astera and anyone else to make her wear an N95 mask because she was not vaccinated.

Again, Astera seeks dismissal of Ms. Menze's Section 1985 claim with prejudice. ECF 11 at 20. The Court will once more grant that request, here for the same reasons it did for Ms. Menze's RFRA and Section 1983 claims. In bringing two complaints already, Ms. Menze has not named a second defendant for the conspiracy she alleges nor pleaded

facts that would support a cognizable intra-corporate conspiracy nor alleged any facts that would allow the Court to reasonably infer the participation of *any* actor outside of Astera in a conspiracy to require her to wear an N95 mask because she was not vaccinated. Again, the Court will not permit yet more pleading to attempt to support a Section 1985 claim, and it is dismissed with prejudice.

### *Health Privacy Claims*

Ms. Menze appears to make two discrete allegations concerning health privacy. *See Compl.* at 17–18 (alleging "[d]isplay" and "[s]haring" of "[p]rivate [h]ealth [i]nformation"). In essence, Ms. Menze avers that Astera policies and internal communications had the effect of revealing her vaccination status to others. Ms. Menze does not articulate a specific law or statute that she believes these actions violated, but Astera construes these claims as arising under HIPAA. If so, Astera argues that the claims must fail "because HIPAA does not create a private right of action. ECF 11 at 16 (citing *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010)).

The Court agrees that Ms. Menze cannot bring a HIPAA claim against Astera. *Dodd*, 623 F.3d at 569. So, apparently, does Ms. Menze. *See* ECF 15 at 10 ("The Defendant's policy requiring the display of private health information (the individual's vaccination status) in of by itself may not be afforded a private cause of action."). Instead, Ms. Menze asserts that her health privacy claims are rooted in "[t]ort" law. *Id.*

To the extent that Ms. Menze intended to make a HIPAA claim, the claim is dismissed due to a lack of private right action and done so with prejudice due to futility. To the extent that Ms. Menze intended to state one or more common law torts related to

her privacy, the Court declines to extend supplemental jurisdiction over such a claim, for the reasons further stated below. However, any such tort claim is dismissed without prejudice.

### State Law Claims

Astera identifies other claims in Ms. Menze's Complaint that, if intended to be asserted as separate causes of action, would arise under state law. *See* ECF 11 at 21 (noting references in the Complaint to "negligence," "breach of contract," "breach of trust," "trespass," "conversion of Plaintiff's private property rights," "denial of unemployment benefits," and "coercion"). Astera argues that each of these arises under Minnesota common law, except for claims related to unemployment benefits, which arise under Minnesota statute. *See id*. Astera argues that the Court simply lacks jurisdiction over claims related to unemployment benefits, which must be directed to the Minnesota Court of Appeals (*see id.* (citing Minn. Stat. § 268.105), and should further decline to exercise supplemental federal jurisdiction over any remaining state law claims pursuant to its discretion under 28 U.S.C. § 1367.

The Court agrees. Torts and contract claims are clearly governed by Minnesota law. This case does not involve diversity jurisdiction, and so this Court would only have jurisdiction over state law claims should it choose to extend such jurisdiction pursuant to 28 U.S.C. § 1367. Having dismissed all the federal claims over which this Court would have had original jurisdiction, any exercise of supplemental jurisdiction is discretionary. *See Porter,* 436 F.3d 920. And here the Court declines to keep any of Ms. Menze's potential state law claims in federal court. Ms. Menze's Complaint lacks sufficient detail and clarity

to understand what specific state law claims, if any, she is making against Astera. Retaining speculative and uncertain state claims after dismissing each of Ms. Menze's federal claims does not promote any of the factors—judicial economy, convenience, fairness, or comity—that guide the Court's decision to exercise supplemental jurisdiction. *See Carnegie-Mellon Univ.*, 484 U.S. at 350. Finally, as for any claim Ms. Menze is making with regard to unemployment benefits, the Court again agrees with Astera that such claims cannot be heard by this Court. *See* Minn. Stat. § 268.105 (providing procedures for appealing unemployment decisions through state employment law judges and the Minnesota Court of Appeals; *see also Albert v. Larson*, No. Civ. 05-1632 (MJD/SRN), 2005 WL 3542872, at *3 (D. Minn. Dec. 21, 2005), aff'd, 228 F. App'x 635 (8th Cir. 2007) ("The Minnesota Court of Appeals has jurisdiction over unemployment appeals, not this Court.").

Consequently, to the extent that Ms. Menze's Complaint states any claim not subject to original federal jurisdiction, the Court declines to exercise supplemental jurisdiction over it and that claim is dismissed without prejudice.

### B.  Motion for Sanctions

Astera also moves for Rule 11 sanctions against Ms. Menze. In essence, Astera maintains that most of Ms. Menze's claims are without any legal merit and that Ms. Menze knew this when she decided to file her amended Complaint. *See generally* ECF 22 (Def's Mem. in Supp. of Mot. for Sanctions). Astera's arguments that Ms. Menze's claims are meritless essentially track its arguments for the dismissal of those claims. In short summary, Astera argues that: Ms. Menze knew her Title VII claims would fail due to her failure to file with the EEOC, but she renewed them in her amended Complaint anyway

(*id*. at 6–8); that Ms. Menze knew her RFRA and Section 1983 claims would fail because her pleaded facts do not establish that Astera is a state actor (*id*. at 8–10); that Ms. Menze asserts a conspiracy claim despite making "no attempt" to identify any member of the conspiracy other than Astera or to elucidate any details of the alleged conspiracy (*id*. at 10).[5] Astera seeks a monetary sanction of $10,000 against Ms. Menze, in addition to an award of attorney fees. *See e.g.*, *id*. at 15 (conceding that it is "difficult to come up with a figure" that accurately captures the sanction being sought).

"Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma v. Crosscode, Inc.*, No. 21-cv-01766 (SRN/BRT), 2022 WL 816555, at *17 (D. Minn. Mar. 17, 2022) (quoting *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)). Ms. Menze is a pro se plaintiff, but the standards of Rule 11 still apply to pro se litigants. *Kunzer v. Doyscher*, No. 05-CV-2640(JMR/AJB), 2006

---

[5] Astera also maintains that Ms. Menze violated Rule 11 by bringing a HIPAA claim, federal criminal claims, and a claim under the Nuremberg Code. *See* ECF 22 at 10–22. Essentially, Astera argues that Ms. Menze had no reasonable basis to believe that she had any right of action for any of these claims. However, the presence of HIPAA, federal criminal law, and the Nuremberg Code in Ms. Menze's Complaint will not factor into the Court's sanctions analysis. First, Ms. Menze has now clearly conceded the futility of any HIPAA claim in response to Astera's motion, and the Court has dismissed the claim with prejudice. Dismissal with prejudice is sufficient to deter Ms. Menze from attempting to renew meritless HIPAA claims. Second, the Court is satisfied that Ms. Menze did not, in fact, intend to allege discrete causes of action based on federal criminal statutes or the Nuremberg Code. The Court declines to consider Ms. Menze's use of rhetoric around federal criminal law or the Nuremberg Code as a basis for Rule 11 sanctions against her, even if such invocations may be absurd or offensive.

WL 8444928, at *1 (D. Minn. July 10, 2006) (citing *Bus.Guides*, 498 U.S. at 551)). Courts, however, "traditionally afford pro se parties some leeway under Rule 11." *Mousel v. Knutson Mortg. Corp.*, 823 F. Supp. 658, 663–64 (D. Minn. 1993) (citing *Bigalk v. Fed. Land Bank Ass'n of Rochester*, 107 F.R.D. 210, 212 (D.Minn.1985).

Here, given an appropriate degree of leeway because of her pro se status, the Court concludes that Ms. Menze's Title VII claim was not objectively unreasonable. It is true that Ms. Menze was expressly informed of the requirement to file with the EEOC before initiating her second lawsuit (as well as the consequences to her claim for failing to do so) in Astera's motion to dismiss her first lawsuit. But the Court does not believe that Ms. Menze was required to believe or agree with Astera's legal arguments in favor of dismissal, even where those arguments provided her with ultimately prudent advice. The fact that Ms. Menze ignored Astera's admonishments and then renewed her Title VII claim without first making an EEOC filing is permanently fatal to her claim, but the Court declines to find that it is sanctionable conduct.

Likewise, the Court finds that Ms. Menze's decision to bring RFRA and Section 1983 claims was not objectively unreasonable. It is true that Ms. Menze was already confronted with Astera's argument that these statutes only apply toward state actors when she brought her initial complaint and Astera brought its motion to dismiss. But Ms. Menze also raises the kernel of a new argument that attempts to reconcile the statutory requirements to the facts she has pleaded. *See* ECF 15 at 7 (arguing that Astera was acting "under the color" of a prevailing pandemic-era "custom" of law by requiring her to be vaccinated or wear an N95 mask). While the Court plainly disagrees with those arguments

and has consequently dismissed the RFRA and Section 1983 claims, the Court once again does not believe that Ms. Menze was required to believe Astera's defense theories before receiving a ruling from any court as to those arguments. The Court finds that Ms. Menze's renewal of her RFRA and Section 1983 claims did not represent sanctionable conduct.

Similarly, the Court concludes that Ms. Menze's 1985 claim was not objectively unreasonable. Again, the Court has dismissed this claim and agrees with Astera that this dismissal was a fairly easy call, given the lack of support for a conspiracy in Ms. Menze's own pleadings. But Ms. Menze did not bring conspiracy claims in her original complaint, and the Court finds that a pro se plaintiff's single attempt to state a claim, even one that is ultimately unsupported, would rarely rise to the level of objective unreasonableness. Here, the better remedy for such an unsupportable claim is a swift dismissal from the Court, which Astera has sought and won. Again, the Court concludes that Ms. Menze's assertion of her Section 1985 claim did not represent sanctionable conduct.

Given that the Court declines to find that Ms. Menze has engaged in objectively unreasonable conduct, Astera's motion is denied. This decision in part reflects the fact that Rule 11 sanctions must be limited to that sufficient to "deter repetition of the conduct or comparable conduct[.]." Fed. R. Civ. P. 11(c)(4). Here, even if the Court found that Ms. Menze engaged in sanctionable conduct, it would find that deterrence was achieved against Ms. Menze because her federal claims are dismissed with prejudice and cannot be brought again. *See Sharma*, 2022 WL 816555, at *18 (declining to issue monetary sanctions because "dismissal with prejudice should sufficiently deter [a plaintiff] from filing additional actions under similar legal theories"). The Court does not believe a monetary

fine would meaningfully strengthen the deterrent effect of dismissal with prejudice and would mostly serve as punishment for previous conduct. However, Ms. Menze is cautioned that the Court would likely reach a different result on a future request for sanctions if she were to attempt to resurrect any claim against Astera dismissed with prejudice by this Order.

## IV.    ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendant Astera Health's Motion to Dismiss (ECF 8) is **GRANTED.**

2. Plaintiff Ali K. Menze's Complaint (ECF 1) is **DISMISSED**. Consistent with the above, Plaintiff's state law claims are dismissed without prejudice. All other claims are dismissed with prejudice.

3. Defendant's Motion for Sanctions (ECF 20) is **DENIED**.

Date: August 8, 2024                                 *s/ Katherine M. Menendez*

                                                                              Katherine M. Menendez
                                                                              United States District Judge